# In the United States Court of Federal Claims

No. 23-282
(Filed: December 4, 2025)

```
*************************************
HARRY E. ARTER,                 *
                                *
              Plaintiff,        *
                                *
     v.                         *
                                *
THE UNITED STATES,              *
                                *
              Defendant.        *
*************************************
```

*Milton C. Johns*, Executive Law Partners, PLLC, Fairfax, VA, counsel for Plaintiff.

*Daniel D. Falknor*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Tyler Winkleman*, Assistant Deputy General Counsel, DFAS Office of General Counsel, and *Thomas Kersey*, Assistant General Counsel, U.S. Department of Defense.

### OPINION AND ORDER

**DIETZ, Judge.**

Harry E. Arter, a civilian employee of the United States Department of Defense ("DoD"), claims he was wrongfully denied premium pay and other cash payments while deployed to Baghdad, Iraq from 2020 to 2022. He also claims that he was wrongfully assessed a debt, which resulted in the garnishment of his wages and that he was improperly deprived of administrative leave. Mr. Arter seeks the restoration of unscheduled leave, payment of uncompensated earnings, liquidated damages, and unspecified legal fees and court costs. The government moves for partial summary judgment and Mr. Arter cross-moves for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons explained below, the Court **GRANTS** the government's motion for partial summary judgment and **DENIES** Mr. Arter's cross-motion for summary judgment.

### I.   BACKGROUND

Civilian employees who perform intelligence work for the DoD are entitled to several types of pay. *See* 10 U.S.C. § 1601 (authorizing the Secretary of Defense to establish civilian intelligence positions); *id.* § 1602(b) ("The Secretary of Defense may, consistent with section 5341 of title 5, adopt such provisions of that title as provide for prevailing rate systems of basic pay and may apply those provisions to positions for civilian employees [covered] . . . by section 5342(a)(2)(A) of that title."). In addition to basic pay under the General Schedule ("GS"), *see* 10

U.S.C. § 1602, these employees may receive premium pay and cash payments authorized in title 5 of the United States Code. 10 U.S.C. § 1603. Premium pay includes overtime pay, 5 U.S.C. § 5542; night differential pay, *id.* § 5545(a)-(c); Sunday pay, *id.* § 5546(a); and holiday pay, *id.* § 5546(b). Cash payments include an "allowance, differential, bonus, award, or other similar cash payment." *See* 5 U.S.C. § 5307(a)(1).

There are limits, however, on the amount of premium pay and cash payments such employees may receive. Under 5 U.S.C. § 5547(b)(2), no employee may receive premium pay under the provisions of law cited in subsection (a) if, in any calendar year, the sum of his basic pay plus his premium pay is more than "the maximum rate of basic pay payable for GS-15" or "the rate payable for level V of the Executive Schedule." *See* 5 U.S.C. § 5547(a) (specifically limiting the types of premium pay referred to in 5 U.S.C. §§ 5542, 5545(a)-(c), 5546(a)-(b), and 5550). Further, under 5 U.S.C. § 5307(a)(1), no employee may receive cash payments if, in any calendar year, the sum of his basic pay plus his cash payments "exceed the annual rate of basic pay payable for level I of the Executive Schedule, as of the end of such calendar year." However, where § 5547 limits the amount of premium pay an employee may receive in any given calendar year, § 5307 merely defers cash payments to the employee if the total amount of basic pay plus cash payments exceeds the statutory limit. Under § 5307(b)(1), "[a]ny amount which is not paid to an employee in a calendar year because of the limitation . . . shall be paid to such employee in a lump sum at the beginning of the following calendar year."

In the Fiscal Year ("FY") 2009 National Defense Authorization Act ("NDAA"), Congress empowered executive agencies to waive the statutory limitations on premium pay and cash payments during calendar year ("CY") 2009. Duncan Hunter NDAA for FY 2009, Pub. L. No. 110–417, § 1101, 122 Stat. 4356, 4615-16 (2008). Congress stated:

> (a) WAIVER AUTHORITY.—During [CY] 2009, and notwithstanding section 5547 of title 5, United States Code, the head of an Executive agency may waive the premium pay limitations established in that section up to the annual rate of salary payable to the Vice President under section 104 of title 3, United States Code, for an employee who performs work while in an overseas location that is in the area of responsibility of the Commander of the United States Central Command, or an overseas location that was formerly in the area of responsibility of the Commander of the United States Central Command but has been moved to the area of responsibility of the Commander of the United States Africa Command, in direct support of, or directly related to—
>
> (1) a military operation, including a contingency operation; or
>
> (2) an operation in response to a national emergency declared by the President.

> (b) APPLICABILITY OF AGGREGATE LIMITATION ON PAY.—Section 5307 of title 5, United States Code, shall not apply to any employee in any calendar year in which that employee is granted a waiver under subsection (a).

*Id.* § 1101(a)-(b), 122 Stat. 4615. In subsequent years, through the annual NDAA, Congress continued to allow executive agencies to extend the waiver. *See, e.g.*, William M. (Mac) Thornberry NDAA for FY 2021, Pub. L. No. 116-283, § 1105, 134 Stat. 3388, 3890 (2021) (amending § 1105 of the FY 2020 NDAA by replacing "through 2020" with "through 2021"). In its FY 2019 NDAA, Congress amended the language relating to the applicability of § 5307 as follows:

> (b) APPLICABILITY OF AGGREGATE LIMITATION ON PAY.—In applying section 5307 of title 5, United States Code, any payment in addition to basic pay for a period of time during which a waiver under subsection (a) is in effect shall not be counted as part of an employee's aggregate compensation for the given calendar year.

John S. McCain NDAA for FY 2019, Pub. L. No. 115-232, § 1104(b), 132 Stat. 1636, 2001 (2018).

      On May 10, 2021, the Acting Under Secretary of Defense issued a memorandum waiving the "premium pay limitation in [] § 5547 . . . for [CY] 2021 for eligible DoD employees who perform work in direct support of, or directly related to, a military operation, including a contingency operation or an operation in response to a national emergency declared by the President, for a period of 42 consecutive days." App. To Def.'s Mot. for Partial Summ. J. [ECF 23-1] at 2. The memorandum provided:

> Covered DoD employees are entitled to premium payments only to the extent the employee's combined payable amount of basic pay and premium pay for CY 2021 does not exceed the annual rate of salary payable to the Vice President under 3 U.S.C. § 104, which is $255,800. Moreover, the aggregate pay limitation in [] § 5307 continues to apply, although any pay in addition to basic pay during the waiver period is exempted when applying this limitation.
>
>                           \* \* \*
>
> For employees covered by the premium pay waiver, the aggregate limitation on pay in [] § 5307 still applies during CY 2021, but any pay in addition to basic pay received during the waiver period is not counted as compensation in applying the aggregate pay limitation. Payments, other than basic pay, in excess of the aggregate limitation

      must be deferred and generally will be paid as a lump-sum payment
      at the beginning of the following CY.

*Id.* at 2, 4.

      Mr. Arter began working for the DoD as a civilian employee in 2009. App. to Pl.'s Mot. Summ. J. [ECF 24-1] at 6 (joint statement of undisputed facts). He "was deployed to the United States Central Command Area of Responsibility from September 2020 until February 2022." *Id.* During his deployment, "Mr. Arter remained at a qualifying location for at least 42 consecutive calendar days and performed work in direct support of, or directly related to, a response to a national emergency declared by the President or a military operation." *Id.* He was therefore "eligible for the DoD's waiver of annual pay limitations during his deployment." *Id.* In CY 2021, Mr. Arter received a total of $255,800.04 in basic pay plus premium pay. *Id.* at 7. However, he earned a total of $321,681.23 in basic pay plus premium pay and "forfeited at least $65,881.19[] of premium pay[.]" *Id.* Mr. Arter was also paid $47,422.00 in post differential pay and $42,422.00 in hazardous pay, which brought his total pay for CY 2021 to $350,971.40.[1] App. to Def.'s Resp. [ECF 27-1] at 3-4. In CY 2022, he was assessed two debts totaling $34,960.16. *Id.* The debts stemmed from an overpayment of hazardous, post differential pay, and overtime pay to Mr. Arter. [ECF 24-1] at 7; [ECF 27-1] at 32.

      On February 23, 2023, Mr. Arter filed the instant complaint challenging the DoD's non-payment of premium pay and issuance of debt notices, as well as its handling of his administrative leave. Compl. [ECF 1] at 1-2; *see also* [ECF 24-1] at 5. On October 25, 2024, the government moved for partial summary judgment on Mr. Arter's claim for additional premium pay. Def.'s Mot. for Partial Summ. J. [ECF 23]. The government did not seek summary judgment as to Mr. Arter's claims regarding the debt notices or administrative leave on the belief that "those issues [could] be resolved through negotiations after the Court's summary judgment decision." [ECF 23] at 11 n.4. On the same day, Mr. Arter cross-moved for summary judgment on all his claims. Pl.'s Mot. for Summ. J. [ECF 24]; *see* [ECF 24-1] at 5. After the motions were fully briefed, *see* [ECFs 27, 28, 29, 30], the Court held oral argument on August 13, 2025, *see* [ECF 31]. During oral argument, Mr. Arter conceded that genuine issues of material fact preclude summary judgment with respect to his claims regarding the debt notices and administrative leave. Oral Argument at 11:06-11:09, *Arter v. United States*, No. 23-282 (Fed. Cl. Aug. 13, 2025). Therefore, summary judgment on these claims is not appropriate, and the only issue before the Court is whether either party is entitled to summary judgment on Mr. Arter's claim for additional premium pay in CY 2021.

## II.    STANDARD OF REVIEW

      Summary judgment may be entered on part of a claim if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(a); *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1308 (Fed. Cir. 2004). An issue is

---

[1] During oral argument, Mr. Arter conceded that he was paid approximately $350,00 for CY 2021 and that this amount was reflected on his W2 tax form. Oral Argument at 10:44-10:45, *Arter v. United States*, No. 23-282 (Fed. Cl. Aug. 13, 2025).

genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Id*. "The moving party bears the burden of demonstrating the absence of genuine issues of material fact." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "To establish 'that a fact cannot be or is genuinely disputed,' a party must 'cite[ ] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" *Shea v. United States*, 136 Fed. Cl. 95, 102 (2018) (alterations in original) (quoting RCFC 56(c)(1)(A)). "The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op.*, 16 F.3d at 1202 (citing *Celotex Corp.*, 477 U.S. at 325). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Id*. (citing *Anderson*, 477 U.S. at 255).

On cross-motions for summary judgment, "each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 009) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "[A]t the summary judgment stage[,] the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Cases involving only questions of law are particularly appropriate for summary judgment." *Raytheon Co. v. United States*, 92 Fed. Cl. 549, 555 (2010) (citing *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999)).

### III.   DISCUSSION

In its motion for partial summary judgment, the government argues that "Mr. Arter indisputably received $255,800.04 in basic pay plus premium pay in CY 2021, which was the Vice President's salary," and that "[d]ue to Congress's restrictions, the United States cannot pay Mr. Arter any more premium pay for CY 2021." [ECF 23] at 11. Mr. Arter responds in his cross-motion for summary judgment, arguing that the government misinterprets the controlling statutes. [ECF 24-1] at 8. He asserts that the amendment in the FY 2019 NDAA "stipulates that any pay in addition to basic pay shall *not* be counted as part of an employee's aggregate compensation for the calendar year" and that this "result[s] in a policy in which the premium payments made to [Mr. Arter] would not count towards the cited premium cap so long as the requirements of working under the waiver found in subsection (a) are satisfied." *Id.* at 9 (emphasis in original). Thus, Mr. Arter contends that a plain reading of the statute "shows that [he] both earned the money and has the legal right to be paid for his work," instead of his earned premium pay being forfeited. *Id.* at 17. The Court finds that there are no genuine issues of material fact regarding Mr. Arter's claim for additional premium pay in CY 2021 and that he is not entitled to additional premium pay.

5

It is undisputed that Mr. Arter was covered by the May 10, 2021, memorandum waiving § 5547's premium pay limitation for CY 2021. [ECF 24-1] at 6. Therefore, under the waiver, Mr. Arter was entitled to receive "premium payments only to the extent [his] combined payable amount of basic pay and premium pay for CY 2021 d[id] not exceed the annual rate of salary payable to the Vice President . . . which [was] $255,800." [ECF 23-1] at 2. According to the parties, in CY 2021, Mr. Arter *earned* a total of "at least $321,681.23" in basic pay and premium pay. [ECF 24-1] at 7. However, he *received* $255,800.04,[2] *id.*, which was comprised of $171,490.80 in basic pay and $84,309.24 in premium pay, *see* [ECF 27-1] at 3-4. Since the combined amount of basic pay and premium pay Mr. Arter earned in CY 2021 exceeded $255,800—the total amount permitted under the waiver—Mr. Arter was not entitled to, nor did he receive, additional premium pay for CY 2021. Any additional premium pay to Mr. Arter for CY 2021 would have violated the statutory maximum established by § 5547, as waived under the FY 2009 NDAA waiver authorization and the May 10, 2021, waiver memorandum. *See Sullivan v. United States*, 229 Ct. Cl. 82, 87 (1981) (stating that "[S]ection 5547[] provide[s] a maximum compensation for the position held by [the plaintiff], which compensation he has received in full [and that] Section 5547 does not deprive [the plaintiff] of any vested rights or otherwise take anything away from him"); *see also Brinkman v. United States*, 158 Fed. Cl. 282, 291 (2022) ("The annual cap applies despite any perceived unfairness in its application because '[a] cap on premium pay, by definition, prevents individuals from earning premium pay for certain hours that would have otherwise qualified. At some point, then, no additional premium pay can be earned.'" (quoting *Lubow v. U.S. Dep't of State*, 923 F. Supp. 2d 28, 37 (D.D.C. 2013), *aff'd*, 783 F.3d 877 (D.C. Cir. 2015))).

While Mr. Arter agrees with the government's application of the limitation on the amount of basic pay and premium pay under § 5547 and the waiver under the FY 2009 NDAA, [ECF 28] at 4-5, he contends that any premium pay in addition to basic pay is exempted when applying the limitation and that, under § 5307, his excess premium pay should have been paid in a lump sum in CY 2022. [ECF 24-1] at 10 ("While the cap may be waived up to $255,800, the subsequent sentence states that any pay in addition to basic pay, which is precisely the kind of pay that this case is centered on, is *exempt* when applying this limitation." (emphasis in original)); *id.* ("[I]t was not the intent of the agency to simply stop paying employees altogether for their essential work overseas that qualified for this exemption under the law[, and] the agency directs deferment of the payments until the following year."); [ECF 28] at 5 ("What Defendant failed to acknowledge and discuss with this Court is [that] section (b)(1) of [§] 5307 [] clearly states that Mr. Arter was eligible for a lump-sum payment of any amount not paid during the calendar year at the beginning of the following calendar year."). To make this argument, Mr. Arter relies on the FY 2019 NDAA, where Congress amended the language relating to § 5307 and on the May 10, 2021, waiver memorandum. [ECF 24-1] at 9-10; [ECF 28] at 5-6. The Court is not persuaded.

The Court begins by "apply[ing] settled principles of statutory construction under which [the Court] must first determine whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (citing *United States v. Gonzales*, 520 U.S. 1, 4 (1997)). "If [the statutory text is plain and unambiguous], [the Court] must apply the statute according to its terms." *Id.*; *accord Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 459 (2002) ("As in all statutory

---

[2] The additional four cents received by Mr. Arter apparently results from rounding by the DoD. [ECF 27-1] at 32.

construction cases, we begin with the language of the statute."); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). In relevant part, the FY 2019 NDAA states: "*In applying section 5307 of title 5, United States Code*, any payment in addition to basic pay for a period of time during which a waiver under subsection (a) is in effect shall not be counted as part of an employee's aggregate compensation for the given calendar year." § 1104(b), 132 Stat. 2001 (emphasis added). The May 10, 2021, waiver memorandum that implemented the waiver states: "[T]he aggregate pay limitation *in 5 U.S.C. § 5307* continues to apply, although any pay in addition to basic pay during the waiver period is exempted when applying this limitation." [ECF 23-1] at 2 (emphasis added). Thus, by their plain language, these clauses govern the application of § 5307 and do not affect the premium pay limitation in § 5547. Significantly, § 5307(a)(1) applies a limitation on the payment of any "allowance, differential, bonus, award, or similar cash payments . . . in a calendar year . . . when added to the total basic pay paid or payable to [an] employee." It provides that, to the extent such cash payments exceed the limitation in a calendar year, "any amount which is not paid to an employee in a calendar year because of the limitation" is paid "in a lump sum at the beginning of the following calendar year." 5 U.S.C. § 5307(b)(1). Thus, § 5307 allows an employee to avoid forfeiture of cash payments that exceed the § 5307(a) limitation and to instead receive the amount of such cash payments that exceeds the limitation as a lump sum in the following calendar year. This deferred payment arrangement, however, does not apply to premium payments that exceed the limitation under § 5547. *Compare* 5 U.S.C. § 5547 (discussing the limitations on premium payments) *with* 5 U.S.C. § 5307 (discussing limitations on cash payments). Further, there is nothing in the FY 2019 NDAA or the May 10, 2021, waiver memorandum that allows an employee to avoid forfeiture of premium payments that exceed the applicable limitation or to receive such excess premium payments in the following calendar year.

Mr. Arter makes several other unavailing arguments in support of his contention that he is entitled to additional premium pay.[3] First, Mr. Arter contends that the government "appears to show that [he] received over $350,000 in CY 2021," and that this cannot be correct because it means that he would have been paid more than $255,800, the limitation for that year. [ECF 30] at 2. Mr. Arter misunderstands the relevant statutes. Under § 5547, as waived by the FY 2009 NDAA and the May 10, 2021, waiver memorandum, Mr. Arter was "entitled to premium payments only to the extent [his] combined payable amount of basic pay and premium pay for CY 2021 [did] not exceed the annual rate of salary payable to the Vice President . . . which [was] $255,800." [ECF 23-1] at 2. In CY 2021, Mr. Arter received $171,490.80 in basic pay and $84,309.20 in premium pay, which when combined reached the limitation. *See* [ECF 24-1] at 7;

---

[3] The Court notes that these additional arguments were first raised by Mr. Arter in his reply brief and that arguments first raised by a movant in a reply brief are typically treated as waived. *See Novasteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further, the non-moving party ordinarily has no right to respond to the reply brief . . . . As a matter of litigation fairness and procedure . . . we must treat this argument as waived.") (emphasis in original). While the Court views these arguments as waived, it nevertheless addresses them.

7

[ECF 27-1] at 3-4. However, this limitation did not apply to cash payments. Rather, cash payments are governed by § 5307, which limits the amount of cash payments, which when added to basic pay, may be paid to an employee in a given calendar year. 5 U.S.C. 5307. Notably, under the FY 2019 NDAA and the May 10, 2021, waiver memorandum, while § 5307's limitation on cash payments continued to apply in CY 2021, "any pay in addition to basic pay during the waiver period [was] exempted when applying this limitation." [ECF 23-1] at 2. Thus, for CY 2021, Mr. Arter was entitled to receive cash payments in that calendar year that he would not otherwise have received. In other words, for CY 2021, in addition to his basic pay and premium pay of $255,800, Mr. Arter appropriately received $95,171.36 in cash payments, for a total of $350,971.36. *See* [ECF 27-1] at 3-4; *see also* Oral Argument at 10:44-10:45, *Arter v. United States*, No. 23-282 (Fed. Cl. Aug. 13, 2025) (Mr. Arter conceded that his W2 tax form reflected that he received approximately $350,00 for CY 2021).

      Next, Mr. Arter contends that the government mischaracterizes the "post differential" and "danger" pay he seeks as premium pay and therefore improperly subjects it to a cap. *See* [ECF 30] at 4. The record does not support Mr. Arter's argument. Mr. Arter's Defense Finance and Accounting Service audit indicates that he received $47,422.00 in danger pay and $47,422.00 in post differential pay. [ECF 27-1] at 3-4. Further, in a July 28, 2023, email, Mary Major, Operations Planner and Analyst with the DoD, identifies the various types of premium pay Mr. Arter earned in CY 2021, and notes—for each type of premium pay—the dollar amount paid, and the dollar amount forfeited. *Id.* at 32. Ms. Major does not include danger pay or post differential pay in her list of the various types of premium pay Mr. Arter earned that year. Further, as explained above, these amounts were treated as cash payments under § 5307 and were therefore not subject to any limitation during the waiver period under the FY 2019 NDAA waiver of § 5307.[4]

      Lastly, Mr. Arter argues that the government "does not indicate if [his] overtime is through the application of the Fair Labor Standards Act ("FLSA") or if [he] is considered exempt from the FLSA and receives his overtime under Title 5." [ECF 30] at 5. He asserts that, "if the [excess] overtime was pursuant to FLSA, such payments would be excluded from premium pay," and therefore not subject to the limitation on premium pay. *Id.* While Mr. Arter is correct that the May 10, 2021, waiver memorandum provides that premium pay "excludes overtime pay paid to employees under the [FLSA]," [ECF 23-1] at 6, his claim that the DoD does not indicate the nature of his overtime is contradicted by the record. In her July 28, 2023, email, Ms. Major classified Mr. Arter's overtime pay for CY 2021 as premium pay. [ECF 27-1] at 32. Specifically, she explained the Mr. Arter was paid $81,166.58 in overtime premium pay and that he forfeited $65,606.46 in overtime premium pay "due to the fact that [he] exceeded the VP max authorized." *Id*. Therefore, the DoD indicated that Mr. Arter's overtime was treated as premium pay and was properly subjected to the limitation on premium pay.[5]

---

[4] The FY 2019 waiver of § 5307 was extended to cover CY 2021 as part of the FY 2020 NDAA. *See* § 1105, 134 Stat. 3890 (amending § 1105 of the FY 2020 NDAA by replacing "through 2020" with "through 2021").

[5] Mr. Arter does not argue, in his complaint or otherwise, that the DoD improperly classified his overtime hours.

## IV.   CONCLUSION

For the reasons stated above, the government's motion for partial summary judgment [ECF 23] is **GRANTED** and Mr. Arter's cross-motion for summary judgment [ECF 24] is **DENIED**. The parties **SHALL CONFER AND FILE** a joint status report **on or before January 7, 2026**, proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge
